No. 22-11437

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**DAVID RIVERA**
Appellant,

v.

**FEDERAL ELECTION COMMISSION**,
Appellee.

Appeal from the United States District Court
For the Southern District of Florida

**BRIEF FOR THE FEDERAL ELECTION COMMISSION**

Lisa J. Stevenson
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

August 14, 2023

Greg Mueller
Attorney
gmueller@fec.gov

Shaina Ward
Attorney
sward@fec.gov

FEDERAL ELECTION
COMMISSION
1050 First Street NE
Washington, DC 20463
(202) 694-1650

**CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Eleventh Circuit Rule 26.1-3, the FEC hereby identifies the following trial judge(s), attorneys, persons, associations of persons, firms, partnerships, or corporations that have/had an interest in the outcome of this appeal. Pursuant to Federal Rule of Appellate Procedure 26.1, the Federal Election Commission, as a government entity, is not required to file a corporate disclosure statement. The FEC is not aware of any publicly traded corporations or companies that have an interest in the outcome of this case or appeal:

- Cannon, Hon. Aileen M., United States District Court Judge
- Cooke, Hon. Marcia G. (deceased), United States District Court Judge
- Deeley, Kevin, Counsel for Appellee Federal Election Commission
- Feldman, Jeffrey D., Counsel for Appellant David Rivera
- Goodman, Jonathan, United States Magistrate Judge
- Hunker, Thomas L., Counsel for Appellant David Rivera
- Hunker Paxton Appeals & Trials, Counsel for Appellant David Rivera
- Mueller, Greg J., Counsel for Appellee Federal Election Commission
- Paxton, V. Ashley, Counsel for Appellant David Rivera
- Rivera, David, Appellant

C-1

- Stevenson, Lisa J., Counsel for Appellee Federal Election Commission

- Trailblazer, Counsel for Appellant David Rivera

- Ward, Shaina, Counsel for Appellee Federal Election Commission

## STATEMENT REGARDING ORAL ARGUMENT

Appellee believes that oral argument is unnecessary to facilitate the resolution of this appeal. The district court correctly applied the controlling law to the facts in entering summary judgment in favor of the FEC and in denying Appellant's two motions filed after entry of summary judgment, and the facts and legal arguments are adequately presented in the briefs and record. *See* Fed. R. App. P. 34(a)(2). To the extent the Court determines that oral argument would be helpful, the Commission requests that the parties be allocated equal time to present their positions.

# GLOSSARY

FEC or Commission        Federal Election Commission

FECA                     Federal Election Campaign Act

# TABLE OF CONTENTS

**Page**

COUNTERSTATEMENT OF JURISDICTION ................................................. 1

COUNTERSTATEMENT OF ISSUES PRESENTED....................................... 1

COUNTERSTATEMENT OF THE CASE......................................................... 2

I.     FACTUAL AND PROCEDURAL BACKGROUND .............................. 2

     A.     The Parties ..................................................................................... 2

     B.     The Federal Election Campaign Act's Prohibition on Making a Contribution in the Name of Another ............................ 3

     C.     Factual Background......................................................................... 8

          1.     *David Rivera's Scheme in the 2012 Primary Election to Illegally Fund the Sternad Campaign* ............... 8

          2.     *David Rivera's Subsequent Activities and Current Criminal Charges*................................................................ 11

     D.     Administrative Proceedings Underlying This Case ...................... 12

     E.     Proceedings in the District Court Leading to Summary Judgment....................................................................... 16

     F.     Proceedings Following Summary Judgment in the District Court.................................................................................. 22

STANDARD OF REVIEW ................................................................................ 24

SUMMARY OF THE ARGUMENT ................................................................. 25

ARGUMENT ..................................................................................................... 27

I.     The District Court Properly Determined That It Had Subject Matter Jurisdiction....................................................................... 27

A.    The FEC Met the Statutory Prerequisites for Filing this Case ............................................................. 27

B.    Rivera Forfeited Any Arguments Regarding Being a Represented Party and The FEC Appropriately Communicated with Rivera In Any Event ...................................................... 31

II.    THE DISTRICT COURT PROPERLY DETERMINED THAT RIVERA VIOLATED 52 U.S.C. SECTION 30122 BY MAKING $75,927.31 OF IN-KIND CONTRIBUTIONS IN THE NAME OF ANOTHER ............................................ 33

A.    Documentary Evidence, Corroborating Witness Testimony and Rivera's Own Statements Established His Liability................................................................. 33

B.    Rivera's Evidentiary Challenges Are Without Merit.................... 35

C.    Appellant Misapplies the Law on Contributions in the Name of Another........................................................... 41

III.    THE DISTRICT COURT CORRECTLY HELD THAT RIVERA'S CIVIL PENALTY IS NOT UNCONSTITUTIONALLY EXCESSIVE............................................ 47

A.    Rivera Waived the Ability to Challenge the Civil Penalty by Not Raising it on Summary Judgment ............... 47

B.    The Civil Penalty is Not Unconstitutionally Excessive Under *Yates* ................................................. 49

CONCLUSION ................................................................ 54

# TABLE OF AUTHORITIES

*Cases*                                                                                      *Page*

*Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.*,
763 F.2d 1237 (11th Cir. 1985)...................................................... 47

*Arrington v. Cobb Cnty.*, 139 F.3d 865 (11th Cir.1998) ....................................... 24

*Austin v. United States*, 509 U.S. 602 (1993) ......................................................... 50

*Bradley v. Pfizer, Inc.*, 440 F. App'x 805 (11th Cir. 2011).................................... 39

*Buckley v. Valeo*, 424 U.S. 1 (1976).................................................................... 6, 45

*Campaign Legal Ctr. v. FEC*,
952 F.3d 352 (D.C. Cir. 2020) .................................................................... 5

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*,
572 F.3d 1271 (11th Cir. 2009)................................................................. 24

*Carter v. BPCL Mgmt., LLC*,
2021 WL 7502560 (S.D. Fla. Sept. 28, 2021) ...................................... 48

*Citizens United v. FEC*, 558 U.S. 310 (2010)...................................................... 6, 52

*Cooper v. Fed. Emergency Mgmt. Agency*,
2019 WL 6218791 (D.C. Cir. Nov. 15, 2019) ...................................... 30

*Cooper v. Nielsen*, 298 F. Supp. 3d 197 (D.D.C. 2018) ................................... 29-30

*CSX Transp., Inc. v. General Mills, Inc.*,
846 F.3d 1333 (11th Cir. 2017)................................................................ 31

*Ellis v. England*, 432 F.3d 1321 (11th Cir.2005)................................................... 37

*FEC v. Comm. of 100 Democrats*, 844 F. Supp. 1 (D.D.C. 1993) ........................ 50

*FEC v. Craig for U.S. Senate*, 70 F. Supp. 3d 82 (D.D.C. 2014).......................... 50

*FEC v. Craig for U.S. Senate*, 816 F.3d 829 (D.C. Cir. 2016).............................. 51

*FEC v. Furgatch*, 807 F.2d 857 (9th Cir. 1987) .................................................... 45

iv

*FEC v. Furgatch*, 869 F.2d 1256 (9th Cir. 1989) .................................... 21, 50, 52

*FEC v. Kalogianis*, 2007 WL 4247795 (M.D. Fla. Nov. 30, 2007) ....................... 40

*FEC v. National Republican Senatorial Committee*,
    877 F.Supp. 15 (D.D.C. 1995) .............................................................. 30

*FEC v. National Rifle Association of America*,
    553 F. Supp. 1331 (D.D.C. 1983) ................................................... 30, 31

*FEC v. O'Donnell*,
    Civ No.15-17, 2017 WL 1404387 (D. Del. Apr. 19, 2017) ................................ 50

*FEC v. Rivera*, 333 F.R.D. 282 (S.D. Fla. 2019) ...................................... 6

*FEC v. Swallow*, 304 F. Supp. 3d 1113 (D. Utah 2018) .............................. 7, 17, 42

*FEC v. Friends of Jane Harman*, 59 F. Supp. 2d 1046 (C.D. Cal. 1999) .............. 40

*Goland v. United States*, 903 F.2d 1247 (9th Cir. 1990) ......................... 45

*Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277,
    1279-80 (11th Cir. 2004) ...................................................................29

*Haves v. City of Miami*, 52 F.3d 918 (11th Cir. 1995) ........................... 39

*Irby v. Bittick*, 44 F.3d 949 (11th Cir. 1995) ....................................... 24

*Jacoby v. Keers*, 779 F. App'x 676 (11th Cir. 2019) ............................. 38

*Kavanaugh v. Miami-Dade Cty.*, 775 F. Supp. 2d 1361 (S.D. Fla. 2011) ........ 29, 30

*Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990) ........................... 24

*Mariani v. United States*, 80 F. Supp. 2d 352 (M.D. Penn. 1999) .............. 6, 7, 45

*Mariani v. United States*, 212 F.3d 761 (3d Cir. 2000) ......................... 5, 6

*McCutcheon v. FEC*, 572 U.S. 185 (2014) ........................................... 52

*Merrill Stevens Dry Dock Co. v. M/V YEOCOMICO II*,
    329 F.3d 809 (11th Cir. 2003) ............................................................ 24

*Minnifield v. Johnson & Freedman II, LLC*,
   522 F. App'x 782 (11th Cir. 2013) ...................................................... 38

*\*United States v. O'Donnell*, 608 F.3d 546 (9th Cir. 2010) .......................... 5, 6, 54

*PDV USA, Inc., v. Interamerican Consulting, Inc.*,
   2020 WL 2479227 (S.D.N.Y. May 13, 2020)................................. 12, 40

*Raney v. Aware Woman Ctr. for Choice, Inc.*,
   224 F.3d 1266 (11th Cir. 2000)......................................................... 25

*Re Decker*, 212 So.3d 291 (Fla. 2017)................................................... 33

*Schwarz v. Bd. Of Supervisors on behalf of Villages Cmty. Dev. Districts*,
   672 F. App'x 981 (11th Cir. 2017) ...............................................47-48

*Sciarretta v. Lincoln Nat. Life Ins. Co.*, 778 F.3d 1205 (11th Cir. 2015) ............. 25

*Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145 (11th Cir. 2021) .................... 39

*Solaroll Shade & Shutter Corp., Inc. v. Bio–Energy Systems, Inc.*,
   803 F.2d 1130 (11th Cir. 1986)......................................................... 49

*Timbs v. Indiana*, 139 S. Ct. 682 (2019)................................................ 50

*United States v. 817 Ne. 29th Drive, Wilton Manors, Fla.*
   175 F.3d 1304 (11th Cir. 1999)......................................................... 51

*\*United States v. Bajakajian*, 524 U.S. 321 (1998)........................................ 50, 51

*\*United States v. Boender*, 649 F.3d 650 (7th Cir. 2011) ........................... 5, 43, 46

*United States v. Carson*, 447 F. App'x 925 (11th Cir. 2011) ................................ 39

*United v. Chaplin's, Inc.*, 646 F.3d 846 (11th Cir. 2011)....................................... 51

*\*United States v. Danielczyk*, 788 F. Supp. 2d 472 (E.D. Va. 2011) ................ 5, 43

*United States v. Hsu*, 643 F. Supp. 2d 574 (S.D.N.Y. 2009)..................................... 5

*United States v. Smukler*, 330 F. Supp. 3d 1050 (E.D. Pa. 2018) ........................ 46

vi

*United States v. Smukler*, 2018 WL 3416401(E.D. Pa. July 13, 2018) .................. 46

*United States v. Whittemore*, 776 F.3d 1074 (9th Cir. 2015) ................................ 43

*Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535 (11th Cir. 1985) .................... 24

\**Yates Pinellas Hematology & Oncology, P.A.*,
    21 F.4th 1288 (11th Cir. Dec. 29, 2021) ........................................... 23, 49, 52, 54

**Statutes and Regulations**

2 U.S.C. § 441f ............................................................................... 4, 5, 13

18 U.S.C. § 1001 ..................................................................................... 41

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 1331 ...................................................................................... 1

52 U.S.C. § 30102 ................................................................................ 3, 4

52 U.S.C. § 30104 .................................................................................... 8

52 U.S.C. § 30104(b)(3)(A) ...................................................................... 3

52 U.S.C. § 30107(e) ............................................................................... 2

52 U.S.C. § 30109(a)(1) ........................................................................... 2

52 U.S.C. § 30109(a)(2) ........................................................................... 2

52 U.S.C. § 30109(a)(3) ......................................................................... 15

52 U.S.C. § 30109(a)(4)(A)(i) ................................................................ 16

52 U.S.C. § 30109(a)(6) ......................................................................... 16

52 U.S.C. § 30109(a)(6)(B) .................................................................... 21

52 U.S.C. § 30109(a)(6)(C) ......................................................... 7, 21, 52

52 U.S.C. § 30109(d)(1)(A)(i) ................................................................ 54

52 U.S.C. § 30109(d)(1)(A)(i)(D) ........................................................... 54

52 U.S.C. § 30116(a)(1)(A) ...................................................................... 4

52 U.S.C. § 30116(a)(7)(B)(i) ................................................................... 4

52 U.S.C. § 30118 .................................................................................... 4

52 U.S.C. § 30119 .................................................................................... 4

52 U.S.C. § 30121 .................................................................................... 4

*52 U.S.C. § 30122 ....................................................................... passim

11 C.F.R. 100.52(d)(1) ............................................................................. 7

*11 C.F.R. 110.4(b) ........................................................... 15, 16, 28, 29

*11 C.F.R. § 110.4(b)(1)(i) ...................................................................... 5

11 C.F.R. § 110.4(b)(1)(iii) .............................................. 4, 7, 16, 17, 18

11 C.F.R. 110.4(b)(1)(iv) ......................................................................... 4

11 C.F.R. 110.4(b)(2)(i) ........................................................................... 5

11 C.F.R. 110.4(b)(2)(ii) ........................................................ 5, 8, 13, 43

11 C.F.R. § 111.24(a)(1) ........................................................................ 21

**Rules**

Fed. R. App. P. 32(a)(5) ......................................................................... 56

Fed. R. App. 32(a)(6) ............................................................................. 56

Fed. R. App. P. 32(a)(7) ........................................................ 56

Fed. R. App. 32(f) ............................................................... 56

Fed. R. Civ. P. 12(b)(1) ........................................... 1, 24, 26, 31

Fed. R. Civ. P. 12(b)(6) ............................................. 17, 27, 28

Fed. R. Civ. P. 32(e) ............................................................ 56

Fed. R. Civ. P. 56(c) ............................................................ 24

Fed. R. Civ. P. 59 ................................................................. 1

Fed. R. Civ. P. 59(e) ...................................................... 23, 47

Fed. R. Civ. P. 60 ................................................................. 1

Fed. R. Civ. P. 60(b) ........................................................... 23

Fed. R. Evid. 801(d)(2)(E) .................................................... 40

Fla Bar. Rule 4-4.2 (Comment) ............................................. 33

**Miscellaneous**

Bipartisan Campaign Reform Act of 2002,
    Pub. L. No. 107-155, § 315, 116 Stat. 81, 108 (2002) ............................ 7

Civil Monetary Penalties Inflation Adjustments,
    74 Fed. Reg. 31,345 (July 1, 2009) ...................................... 21

U.S. Const. amend. VIII ........................................................ 50

## COUNTERSTATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291; 28 U.S.C. § 1331.

## COUNTERSTATEMENT OF ISSUES PRESENTED

The district court below granted the Federal Election Commission's ("FEC" or "Commission") motion for summary judgment, finding that appellant David Rivera secretly provided nearly $76,000 of in-kind contributions to the primary election campaign of Justin Lamar Sternad in Florida's 26th Congressional District in knowing and willful violation of 52 U.S.C. § 30122 and assessing a $456,000 civil penalty for those violations of the Federal Election Campaign Act's ("FECA") prohibition on contributions made in the name of another. The district court properly denied Rivera's post-judgment motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, determining that the Commission met its statutory obligations regarding notifications during the administrative process. The district court also properly denied Rivera's additional post-judgment motion pursuant to Fed. R. Civ. P. 59 and 60, holding that the civil fine imposed against Rivera was not unconstitutionally excessive under the Eighth Amendment of the U.S. Constitution.

The issues now presented for review are:

I.      Whether the District Court properly held that the Commission met its
statutory prerequisites in the administrative process prior to filing suit.

II.     Whether the District Court properly held that Rivera violated 52 U.S.C. §
30122's prohibition against making contributions in the name of another
by making $75,927.31 of in-kind contributions to secretly fund the
primary election campaign of Justin Lamar Sternad.

III.    Whether the District Court properly held that Rivera's civil penalty for
violating 52 U.S.C. § 30122's prohibition against making contributions in
the name of another was not unconstitutionally excessive or vague.

## COUNTERSTATEMENT OF THE CASE

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

Appellee FEC is the independent agency of the United States government
authorized to institute administrative investigations of possible violations of FECA
52 U.S.C. § 30109(a)(1)-(2), and to initiate actions in the United States district
courts for civil enforcement of it, *id*. §§ 30107(e), 30109(a)(6).  (ECF 41 ¶ 5; ECF
50 ¶ 5.)[1]

---

[1]     References to the district court record are noted by the electronic filing
system (ECF) entry and the page numbers that appear in the header generated by
the district court's electronic filing system. Where multiple deposition transcript

2

Appellant David Rivera successfully ran for office as a Florida state legislator multiple times and for Florida's 25th Congressional District in 2010. (ECF 41 ¶ 6; ECF 50 ¶ 6.)  He defeated Democrat Joe Garcia in the general election that year.  *(Id.)*  Rivera was a United States Congressman representing Florida's 25th Congressional District from January 2011 through January 2013. (*Id.*)  Rivera ran for re-election as a Republican candidate in 2012, but to represent Florida's redrawn 26th Congressional District.  (*Id.*)  A leading candidate to be his general-election opponent was Garcia, who faced three candidates in the Democratic primary including Justin Lamar Sternad.  (ECF 41 ¶ 12; ECF 50 ¶ 12.) Garcia won the Democratic primary and defeated Rivera in the general election. (*Id.*)

### B. The Federal Election Campaign Act's Prohibition on Making a Contribution in the Name of Another

FECA requires that the authorized campaign committees of federal candidates have treasurers receive and spend funds, deposit contributions into designated campaign accounts at depositories, and keep records of contributors. 52 U.S.C. § 30102.  All contributors above a threshold amount must be identified in publicly filed disclosure reports.  *See* 52 U.S.C. § 30104(b)(3)(A) (requiring campaigns to identify each person contributing "in excess of $200" in an election

---

pages appear on a single document page, however, the specific page number of the source transcript is noted by "p." or "pp."

cycle). Candidate committees can accept no contributions from individuals that

aggregate more than a few thousand dollars per election, an inflation-adjusted

amount that was $2,500 in 2012. 52 U.S.C. § 30116(a)(1)(A), (f). Expenditures

made "in cooperation, consultation, or concert, with" a candidate or her campaign

"shall be considered to be a contribution to such candidate." 52 U.S.C. §

30116(a)(7)(B)(i). Candidate campaigns are not permitted to accept contributions

from a number of sources, including corporations, labor organizations, government

contractors, and foreign nationals. 52 U.S.C. §§ 30118, 30119, 30121.

Disbursements by committees may be made in cash only in amounts of $100 or

less. 52 U.S.C. § 30102.

To make a number of these provisions effective, FECA provides that "[n]o

person shall make a contribution in the name of another person." 52 U.S.C. §

30122 (formerly 2 U.S.C. § 441f). And just as one may not make a contribution in

the name of another, the Act and Commission regulations also prohibit a person

from knowingly accepting a contribution made by one person in the name of

another person.[2] Thus, schemes to conceal the true source of campaign

contributions by funneling funds using false names or straw donors are prohibited.

"[F]alse name" contributions are defined as "[m]aking a contribution of money or

anything of value and attributing as the source of the money or thing of value

---

[2]    52 U.S.C. § 30122 (formerly 2 U.S.C. § 441f); 11 C.F.R. § 110.4(b)(1)(iv).

another person when in fact the contributor is the source." 11 C.F.R. 110.4(b)(2)(ii); *see United States v. O'Donnell*, 608 F.3d 546, 549 (9th Cir. 2010). A straw-donor or concealed-conduit contribution is when one person provides money to another to make a contribution without disclosing the source of money, is another example of a type of conduct prohibited by section 30122. 11 C.F.R. 110.4(b)(2)(i).

Courts have repeatedly enforced the prohibition in both contexts. *See, e.g., United States v. Boender*, 649 F.3d 650, 661 (7th Cir. 2011) (concluding § 441f "unambiguously criminalized both straw man and false name contributions"); *O'Donnell*, 608 F.3d at 546 (same); *Mariani v. United States*, 212 F.3d 761, 775 (3d Cir. 2000) (concluding "[p]roscription of conduit contributions (with the concomitant requirement that the true source of contributions be disclosed) would seem to be at the very core of the [*Buckley v. Valeo*] Court's analysis" and therefore upholding § 441f); *see also United States v. Danielczyk*, 788 F. Supp. 2d 472, 478-85 (E.D. Va. 2011) (Section 441f prohibits "pass-through contributions"); *United States v. Hsu*, 643 F. Supp. 2d 574, 576 (S.D.N.Y. 2009) (evidence sufficient to support conviction in "unlawful straw donor scheme").

Section 30122 "is designed to ensure accurate disclosure of contributor information" by prohibiting persons from making contributions in the name of another. *Campaign Legal Ctr. v. FEC*, 952 F.3d 352, 354 (D.C. Cir. 2020) (per

curiam).  "[S]uch contributions undermine transparency . . . by shielding the identities of true contributors" to a political campaign, *O'Donnell*, 608 F.3d at 554, and deprive the electorate of crucial information about the "sources of election-related spending," *Citizens United v. FEC*, 558 U.S. 310, 367 (2010).

Without the prohibition, individuals or campaigns could "thwart disclosure requirements and contribution limits" by attributing contributions to false names or straw donors.  *O'Donnell*, 608 F.3d at 549.  False attributions of that type undermine the government's interests in providing the electorate with "information as to where political campaign money comes from and how it is spent by the candidate." *Buckley v. Valeo*, 424 U.S. 1, 66-67 (1976) (per curiam) (quotation marks and footnote omitted).  Section 30122 ensures that the "true source[s] of contributions [are] disclosed." *Mariani*, 212 F.3d at 775.

The prohibition on contributions in the name of another also prevents circumvention and enables detection of violations FECA's source and amount limits on contributions.  *O'Donnell*, 608 F.3d at 549.  The ban ensures that donors who have contributed the maximum amount to a candidate do not evade that limit by financing the contributions of others.  *FEC v. Rivera*, 333 F.R.D. 282, 286 (S.D. Fla. 2019); *Mariani v. United States*, 80 F. Supp. 2d 352, 368 (M.D. Pa. 1999). This provision further prevents corporations, unions, government contractors, and

foreign nationals from evading FECA's restrictions by contributing in the names of those who are permitted to contribute. *See Mariani*, 80 F. Supp. 2d at 368.

One subparagraph of the FEC's implementing regulation previously prohibited knowingly helping or assisting the making of a contribution in the name of another. 11 C.F.R. § 110.4(b)(1)(iii) (2022). That provision was struck down by a court in another jurisdiction during the course of the proceedings below and recently removed from the Commission's regulations. *FEC v. Swallow*, 304 F. Supp. 3d 1113, 1118 (D. Utah 2018); Contributions in the Name of Another, 38 Fed. Reg. 33816 (May 25, 2023).

Violations of section 30122 are some of the most significant offenses under FECA. Reflecting the importance of the provision, Congress significantly enhanced the potential penalties for knowing and willful violations of the prohibition on conduit contributions in 2002. *See* Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107-155, § 315, 116 Stat. 81, 108 (2002). Civil penalties for violations of section 30122 are authorized to be five times greater than the penalties for other knowing and willful FECA violations. *See* 52 U.S.C. § 30109(a)(6)(C).

"[I]n-kind contributions" include "the provision of any goods or services without charge or at a charge that is less than the usual and normal charge for such goods or services." 11 C.F.R. 100.52(d)(1). Stated differently, an "in-kind"

contribution is simply a contribution of goods, commodities, or services as opposed to a monetary contribution. *See Webster's Third New International Dictionary* 1243 (2002). The dollar value of an in-kind contribution is subject to limits and must be reported. *See* 52 U.S.C. § 30104; 11 C.F.R. 110.4(b)(2)(ii).

### C.    Factual Background

#### 1. *David Rivera's Scheme in the 2012 Primary Election to Illegally Fund the Sternad Campaign*

Appellant David Rivera secretly provided in-kind contributions to fund Sternad's 2012 congressional primary election campaign and directed others to falsely hide his involvement as the source of the funds. Those campaign efforts aided Rivera's own election efforts by opposing Joe Garcia during his primary election. Garcia was the candidate Rivera was likely to — and did — ultimately face in the general election.

The scheme began at a lunchtime meeting at the Catch of the Day Restaurant on April 2, 2012, where Rivera directed his former romantic partner Ana Alliegro to contact Sternad to provide assistance to Sternad on his campaign. (ECF 142-5 at 13-14; ECF 142-6 ¶ 4; ECF 142-7 at 5.) Alliegro proceeded to contact Sternad to set up a meeting for the offer to assist his campaign. (ECF No. 142-5 at 13-15.) Along with Jenny Nillo, an associate of Alliegro's, they met at Miller's Ale House, and Alliegro outlined the assistance she and Rivera could provide. (ECF 142-5 at 14-15; ECF 142-8 at pp. 54, 113; ECF 142-35 ¶ 4; ECF 142-6 ¶ 7.) Rivera

provided Alliegro with the money needed to pay for Sternad's ballot qualification fee and oversaw the submission of the qualifying papers. (ECF 142-5 at 17-20; ECF 142-29.) Throughout the scheme, Alliegro served as a "middleman" to assist Rivera in his efforts to illegally fund the Sternad campaign. (*See generally* ECF 142-5.) Rivera delivered cash to vendors providing services to the committee or arranged for cash that he controlled to be delivered to vendors providing services to the campaign. (*See id.*) The vendors that Rivera directed were: (1) Yolanda Rivas, a graphic designer for the Sternad mailers; (2) Henry Barrios, who owned a company called Expert Printing, used to print the Sternad mailers; and (3) John Borrero, who owned a company called Rapid Mail used for mailing the Sternad mailers to targeted voters. (ECF 142-5 at 26-29; ECF 142-13 ¶ 3; ECF 142-14 ¶ 3; ECF 142-15 ¶ 3; ECF 142-30 ¶¶ 5-10.) Rivera hand-picked each of these vendors, all of which he had used in his prior campaigns, and paid them for their services. (*See id.*) Rivera used a fourth vendor who ultimately did not end up being paid, Hugh Cochran of Campaign Data, to provide the addresses for the voters to be targeted when the Sternad mailers were sent. (ECF 142-14.)

The detailed business records, contemporaneous correspondence and sworn testimony from the vendors show that Rivera paid the vendors a total of $75,927.31:

| In-Kind Contribution | Cash Payment |
|---|---|
| Graphic Design Work | $2,600 |
| Printing Costs, First Round to Expert Printing | $20,430.21 |
| Printing Costs, Second Round to Expert Printing | $15,000 |
| Mailer 1 (cash to Rapid Mail) | $2,731.35 |
| Mailer 2 (cash to Rapid Mail) | $2,624.35 |
| Mailer 3 (cash to Rapid Mail) | $2,624.35 |
| Mailer 4 (cash to Rapid Mail) | $2,624.35 |
| Mailer 5 (Cash to Rapid Mail) | $2,624.35 |
| Mailer 6 (Cash to Rapid Mail) | $2,624.35 |
| Second Round Mailing (cash to Rapid Mail) | $22,044 |
| **Total Cash Payments** | **$75,927.31** |

While this scheme was unfolding, Alliegro and Rivera stayed in direct communication via text and phone, with Alliegro regularly seeking direction from Rivera on payment issues and the campaign's messaging.  (ECF 142-5 at 26-33; ECF 142-33.)  Rivera sought to conceal these in-kind contributions by avoiding a paper trail.  (ECF 142-5 at 26-29; ECF 142-13; ECF 142-14; ECF 142-15; ECF 142-30.)  He paid the vendors in cash to produce and distribute materials for Sternad's campaign, and sought to remove his name from anything showing his involvement.  (*See id.*; *see also* ECF 142-32 at pp. 88, 149-151.)  Rivera then directed Alliegro to direct Sternad to file disclosure reports that falsely stated that the contributions were loans from Sternad's personal funds.  (ECF 142-5 at 33-35; ECF 142-8 at pp. 50-51; ECF 142-42.)  Sternad and Alliegro referred to the person that was providing the funds for his campaign as "DR," and the "Gangster."  (ECF 142-8 at p. 129.)

Sternad was criminally prosecuted and pled guilty for his role in this scheme as well as other activity. *United States v. Sternad*, Case No. 1:13-CR-20108 (S.D. Fla). After Sternad's guilty plea, Sternad amended his FEC disclosure reports to reflect that what had previously been reported as "loans from personal funds" had actually come in via contributions, and, in a cover letter to the FEC, Sternad explained the deposit of funds into his bank account were "coordinated" and payments were made directly to vendors, by "Ana Alliegro and/or David Rivera." (ECF 142-11; ECF 142-12.) Alliegro was also criminally prosecuted and testified before a criminal grand jury regarding her and Rivera's role in this scheme. *United States v. Alliegro*, 14-20102-CR (S.D. Fla.). Alliegro testified before the grand jury specifically that the direction for the scheme and cash to pay for the Sternad campaign always came from David Rivera. (ECF 142-5.)

**2. *David Rivera's Subsequent Activities and Current Criminal Charges***

Rivera has continued to run for political office since the 2012 election. In March 2017, Rivera filed to run as a candidate in 2018 for Florida's 105th House District. (ECF 41 ¶ 6; ECF 50 ¶ 6.) And more recently, in 2022, Rivera filed paperwork with the Florida Division of Elections to run for state House District 119. Rivera has also stated recently that he is currently considering a run for the Florida State House of Representatives. *See* Def.'s Unopposed Mot. to Lift His

11

Curfew, *USA v. Rivera*, 1:22-cr-20552-DPG (Doc. No. 88) at 2 (S.D. Fla. July 26, 2023).

Rivera's financial situation has been illuminated in a current criminal prosecution on separate charges and a related civil suit. Rivera has been indicted for money laundering, conspiracy, and representing a foreign government without registering in violation of the Foreign Agents Registration Act. *See* Indictment, *USA v. David Rivera*, 1:22-cr-20552-DPG (Doc. No. 3) (S.D. Fla. Nov. 16, 2022). The indictment alleges Rivera was part of a conspiracy to lobby in the United States on Venezuela's behalf, with compensation occurring by way of a wholly owned U.S. subsidiary of the state-owned oil company of Venezuela contracting with Interamerican Consulting, Inc., a Florida corporation controlled by Rivera, on March 21, 2017. *See id.* In May 2020, the subsidiary filed a civil lawsuit against Rivera's consulting company alleging a right to recoupment of $15 million of a $50 million contract that it had paid in 2017 for a failure to complete the contracted work. *PDV USA v. Interamerican Consulting*, Case No. 20-cv-03699-JGK (S.D.N.Y.) (Doc. No. 1).

### D.    Administrative Proceedings Underlying This Case

On April 26, 2013, the Commission notified David Rivera by mail that it had received information in the normal course of carrying out its supervisory responsibilities indicating that "you *or your funds* may have been involved" in the

Sternad-related violations of the name-of-another prohibition and other provisions of FECA.  (ECF 171-4 at 2 (emphasis added).)  Rivera submitted no response.  (ECF 172-1 ¶ 2.)

The Commission unanimously found reason to believe that Rivera had knowingly and willfully violated 2 U.S.C. § 441f (now 52 U.S.C. § 30122).  He was notified with a Factual and Legal Analysis, which described the Sternad-related scheme as "a plain example of false-name contributions" and continued as follows: "Sternad's co-conspirators — one of whom has been identified as Rivera — made direct and in-kind contributions to the Sternad campaign totaling $81,486.20.  The Commission therefore finds reason to believe Rivera violated the Act by falsely making contributions in Sternad's name."  (ECF 171-5 at 11.)  The analysis cited 2 U.S.C. § 441f (now 52 U.S.C. § 30122) and cited and quoted the regulation for false-name contributions, 11 C.F.R. § 110.4(b)(2)(ii).  (*Id.* at 11 n.31.)[3]

In September 2013, Rivera designated counsel to appear for him before the FEC.  (ECF 172-1 at 12.)  Rivera's counsel mailed a response to the Commission's reason-to-believe letter denying that Rivera had made contributions in the name of another.  (ECF 172-1 at 10-11.)  Agency staff

---

[3]    The letter also notified Rivera that the Commission had found reason to believe he had committed two additional violations, exceeding the contribution limits and exceeding the currency contribution limit.  (ECF No. 171-5 at 11-12.)

provided a courtesy copy to Rivera's counsel of the earlier notification from April.  (ECF 172-1 ¶ 4.)

Rivera's designated counsel ceased responding to the FEC.  In order to secure an interview with Rivera during the Commission's investigation, an FEC attorney attempted to communicate with Rivera's counsel over the course of two months, in October and November of 2016, with multiple phone calls, emails, an overnight mail letter, and an attempted fax.  (ECF 171-5 at 2-3; ECF 172-1 ¶ 5; *id.* at 18-19.)  Agency counsel left a voicemail to Mr. Rivera confirm whether he was represented, a request that was not immediately responded to.  (ECF No. 172-1 ¶ 6; *id.* at 20.)  Agency counsel subsequently received a voicemail message from his counsel and then, a few weeks later, a call from Rivera himself at which time he provided an email address to be used for the scheduling of the phone interview that was being sought and for the sending of documents from the matter that he requested.  (ECF 172-1 ¶¶ 6-7.)  Rivera responded to further written efforts to obtain Rivera's representation status with a further request for information about the investigation and deferred consideration of a telephone interview.  (ECF 172-1 ¶¶ 8-9; *id.* at 20-22.)

After months of unsuccessfully attempting to confirm representation status and to set up a telephone interview, and with Rivera having begun to represent himself, on December 16, 2016, Rivera was sent a subpoena with

questions and document requests, along with repeat information regarding his ability to obtain representation.  (ECF 172-1 ¶ 10; *id.* at 24-30.)  Rivera emailed a response on January 16, 2017.  (ECF No. 172-1 ¶ 10).

After the completion of the investigation, the FEC's General Counsel notified Rivera on April 28, 2017, of her recommendation that the Commission find probable cause to believe that he knowingly and willfully violated 52 U.S.C. § 30122 and provided a brief with her positions on the legal and factual issues in the matter.  (52 U.S.C. § 30109(a)(3); ECF 172-1.)  This brief concluded that there was probable cause to believe that David Rivera knowingly and willfully violated 52 U.S.C. § 30122 and 11 C.F.R. 110.4(b).  (ECF 172-1 at 46.)  The brief described how "Rivera orchestrated a scheme to funnel contributions to Sternad," "took extensive measures to conceal his involvement," and how "Rivera, with Alliegro's help, coordinated and funded the production and distribution of those campaign materials."  (ECF 172-1 at 33, 36)  The brief described how the scheme primarily involved cash payments from Rivera but also included that were facilitated by Rivera but from checks drawn from a nonprofit entity named Florida Action Network that had received funding from other persons.  (ECF 172-1 at 34-41; *id.* at 42-43.)  It contained a chart showing the exact same transactions, among others, that were later included in the Amended Complaint in this action and

15

specified that Rivera arranged these payments.  (ECF 172-1 at 37.)  "Rivera did not submit a written response."  (ECF 142-36 ¶ 5.)

On June 1, 2017 the Commission voted 5-0 to find probable cause to believe that Rivera had "knowingly and willfully violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b)."  (ECF 172-1 at 53.)  On June 2, 2017, the Commission notified Rivera of these findings and sent a proposed conciliation agreement to initiate the required attempt to correct the violations through the informal method of entering into such an agreement.  (ECF 171-7; 52 U.S.C. § 30109(a)(4)(A)(i).)  The notification and proposed conciliation agreement from the FEC explained it had found probable cause to believe that Rivera "knowingly and willfully violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b)."  (ECF 171-7 at 2, 4.)  The notice and agreement did not cite or specify a particular clause of 11 C.F.R. § 110.4(b).  (*Id.*)

### E.    Proceedings in the District Court Leading to Summary Judgment

Unable to conciliate the matter, the Commission voted unanimously to authorize this lawsuit and the FEC filed its complaint on July 14, 2017.  52 U.S.C. § 30109(a)(6); ECF 1, ECF 171-8.  The original complaint included allegations regarding both the payments that had come from cash Rivera provided and the funds from a nonprofit that Rivera had facilitated.  (ECF 1 at 3-4.)  It concluded that Rivera violated both 52 U.S.C. § 30122 and the subparagraph of its implementing regulation, 11 C.F.R. § 110.4(b)(1)(iii), which prohibits

16

knowingly helping or assisting the making of a contribution in the name of another.  (*Id.* at 9)  After the Court had granted the Commission additional time to serve process on Rivera because Rivera had "dodged service in this matter and has otherwise failed to respond" to attempts to contact him, the United States Marshals Service was able to successfully serve him on October 20, 2017, at an airport.  (ECF 11; App'x Part A at 4 (listing ECF 15).)

Rivera then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  (ECF 17.)  Following the submission of the parties' briefing on that motion, the United States District Court for the District of Utah issued an opinion in another case brought by the FEC.  *See Swallow*, 304 F. Supp. 3d at 1118.  That court granted a motion to dismiss, enjoined the Commission from enforcing 11 C.F.R. § 110.4(b)(1)(iii), and ordered that subparagraph stricken from the Code of Federal Regulations.  After additional briefing about that decision, this Court granted Rivera's motion to dismiss, construing the original complaint as exclusively seeking relief under 11 C.F.R. § 110.4(b)(1)(iii).  (ECF No. 31.)  Because there was a jurisdictional basis outside of the helping or assisting regulation in the original complaint, the Commission sought leave to file an amended complaint focusing on Rivera's primary liability for violating FECA's prohibition on contributions in the name of another, 52 U.S.C. § 30122.  (ECF 32.)  All of the factual allegations in the Amended Complaint were in the original

17

complaint, but the Amended Complaint omitted allegations regarding payments by check from a nonprofit that Rivera had merely facilitated and did not claim that Rivera violated the helping or assisting portion of the regulation codified at § 110.4(b)(1)(iii).  (ECF 41 at 5.)  Instead, the Amended Complaint's sole cause of action asserted that "Defendant David Rivera knowingly and willfully violated 52 U.S.C. § 30122; 11 C.F.R. § 110.4(b)(1)(i) (same), by making contributions in the name of others to Justin Lamar Sternad's 2012 primary campaign in Florida's 26th U.S. Congressional District."  (ECF 41 ¶ 35.)

Defendant then filed a 12(b)(6) Motion to Dismiss the FEC's Amended Complaint, arguing that the Amended Complaint did not state a claim because it failed to allege that Rivera concealed his identity from the vendors involved and the Sternad campaign and that the FEC's claim is barred by the statute of limitations.  The Court denied defendant's Motion in its entirety, holding that the FEC had stated a claim for a violation of section 30122, and that the Amended Complaint related back to the July 14, 2017 date of the original complaint and was therefore timely.  (ECF 49; *see also* ECF 40.)

Following discovery, the parties submitted opposing summary judgment motions.  On February 23, 2021, the district court issued its order granting summary judgment to the Commission and denying Rivera's motion for summary judgment.  (ECF 163.)  In granting the Commission's motion, the district court

determined that all of Rivera's arguments in "his astoundingly concise (7-page)

opposition brief" to the Commission's motion, lacked merit.  (*Id.* at 4.)  The

district court held that "when reviewed as a whole, the record evidence quite

obviously paints a picture showing that Rivera engaged in a scheme to unlawfully

fund the Sternad campaign."  (*Id.* at 5.)  Furthermore, the Court found that

"Rivera's opposition brief fails to rebut or even address much of that evidence."

(*Id.*)

Reviewing the evidence provided by the Commission, the court determined

first that it could properly consider Alliegro's grand jury and plea colloquy

testimony at summary judgment, and additionally that Alliegro did not repudiate

this prior testimony through a 2019 declaration provided by Rivera or a bar

complaint Alliegro purportedly filed during her criminal proceedings.  (*Id.* at 5-7.)

The court then held that the evidence clearly established Rivera's liability for

violation of 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(B)(1)(i).  (ECF 163 at 19.)

Alliegro's grand jury and plea colloquy testimony made it "quite obvious" that

Alliegro acted as a middleman to "Rivera in his efforts to illegally fund the Justin

Lamar Sternad Congressional Campaign."  (*Id.*)

In addition to Alliegro's testimony, the Court held that "the sworn testimony

of no-less than six independent witnesses: Jenny Nillo, Henry Barrios, Yolanda

Rivas, Hugh Cochran, John Borrero, and Justin Sternad," further established

Rivera's liability.  (ECF 163 at 19).  The district court further noted the "plethora of other documentary exhibits to further outline the scheme that Rivera and Alliegro orchestrated."  (*Id*. at 30)

Importantly, the Court further found that "Rivera's opposition brief did not contest the testimony of Sternad, Jenny Nillo, Henry Barrios, Yolanda Rivas, Hugh Cochran, or John Borrero.  (*Id.* at 33.)  Nor did the opposition brief contest or even address the testimony of Alliegro other than in its misguided efforts to have that testimony precluded from consideration.  (*Id*.)  Furthermore, Rivera's self-serving affidavits submitted in opposition "fail to create an issue of fact in light of the previously described abundant evidence in support of the FEC's Motion."  (*Id*.)  In sum, the court held that "the testimonial evidence in this case establishes that Rivera orchestrated a scheme in which he made unlawful contributions in the name of another to the Sternad campaign for the purpose of undermining Joe Garcia's campaign."  (*Id.*)  "Rivera accomplished this by using Alliegro and other third parties to make cash payments on behalf of the Sternad campaign.  (*Id.*)  "Additionally, the uncontested testimonial evidence adduced in this case shows that Rivera directed Sternad to file false reports with the FEC."  (*Id.* at 33-34.).

In determining the appropriate penalty, the Court properly noted that it was authorized to award a civil penalty which did not exceed the greater of $7,500 for each violation or an amount equal to any contribution or expenditure involved in

such violation. (*Id.* at 34.); *see also* 11 C.F.R. § 111.24(a)(1) (2012) (providing the amount applicable under 52 U.S.C. § 30109(a)(6)(B) as adjusted by inflation pursuant to statute); FEC, Civil Monetary Penalties Inflation Adjustments, 74 Fed. Reg. 31,345 (July 1, 2009). The Court further recognized its authority to award enhanced civil penalties for "knowing and willful" violations. *See* ECF 163 at 34-35; 52 U.S.C. § 30109(a)(6)(C) (providing for penalties not less than 300% of the amount involved and not more than the greater of $50,000 or 1,000% of the amount involved). Examining the factors set forth in *FEC v. Furgatch*, 869 F.2d 1256, 1258 (9th Cir. 1989), the Court determined a penalty of $456,000, which is a rounded sum of 600% of the $75,927.31 amount of violation, was an appropriate penalty for Rivera's knowing and willful violations. (ECF163 at 37.)[4] That penalty amount was in the lower half of the range the Court could have imposed.[5]

In reaching that figure, the Court considered: (1) Rivera's bad faith; (2) the injury to the public caused by Rivera's actions; (3) Rivera's ability to pay; and (4)

---

[4] Evidence from discovery established that the costs of the design work, printing, and mailing for the transactions that are indisputably at issue here were slightly higher than the available evidence had indicated at the time of the Amended Complaint. (ECF 41.)

[5] The FEC had made an error in its summary judgment brief, with the requested amount not corresponding to the requested percentage of the violation. (ECF 142 at 1-2; *id.* at 17, 20.) The district court entered the final judgment that the Commission later proposed with a payment consistent with the previously requested $456,000 amount while the previously requested higher percentage of the amount in violation was disregarded. (*See* ECF 177.)

the necessity of vindicating the authority of the FEC and the penalty's deterrent effect. (ECF 163 at 34-39). Notably, the Court highlighted that Rivera's opposition failed to oppose the Commission's civil penalty argument and was in fact "silent on [the penalty] issue." (*Id.* at 34.) Rivera was also sanctioned $927 for violation of a court order to appear for deposition in an order that has not been appealed. (ECF No. 169.)

### F.    Proceedings Following Summary Judgment in the District Court

On March 31, 2021, Rivera filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. (ECF 171.) In what the district court described as "a last-ditch effort to avoid a final judgment being entered against him," (ECF 176 at 3), Rivera asserted that the statute of limitations provided lapsed prior to the filing of the Commission's action, and that the FEC failed to provide Defendant David Rivera with pre-suit notice of his violations of 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b)(1)(i). (ECF 176 at 3). On March 24, 2022, the district court denied the motion, holding that the Commission had provided Rivera with pre-suit notice of his alleged violations and that the statute of limitations had not lapsed. The Court subsequently entered a final judgment in favor of the Commission that ordered defendant to pay a penalty of $456,000 plus costs of $927 and permanently enjoined Rivera from making campaign contributions in the name of another in violation of 52 U.S.C. § 30122. (ECF 177.)

On April 26, 2022, the defendant filed a second post-judgment motion, this time pursuant to Fed. R. Civ. P. 59(e) or Rule 60(b) and asserting for the first time that the civil penalty was unconstitutionally excessive under the Eighth Amendment.  The district court denied this motion on March 31, 2023 (ECF 191).[6] In its order, the court reiterated that Rivera had "raised no argument or objection to the $456,000 penalty proposed by the FEC," and held that an evidentiary hearing was not "necessary or justified."  (ECF 191 at 2-3).  The district court held that Rivera's "failure to raise any argument at all regarding the civil penalty provides sufficient basis for denying him the opportunity to bring an Eighth Amendment challenge for the first time now."  (*Id.* at 5.)  Furthermore, the Eleventh Circuit's decision in *Yates Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288 (11th Cir. 2021) ("*Yates*"), issued after summary judgment briefing and after the district court's order granting summary judgment, provided no basis for reconsideration. (ECF 191 at 6.)  Rivera filed the instant amended notice of appeal on April 7, 2023.  (ECF 193).

---

[6]    The late United States District Judge Marcia G. Cooke presided over this matter from December 18, 2017, until it was reassigned to United States District Judge Aileen M. Cannon on January 30, 2023.  (App'x Part A at 19 (listing ECF 190).)

23

## STANDARD OF REVIEW

Summary judgment is appropriate where "there are no genuine issues of any material fact and . . . the moving party is entitled to judgment as a matter of law." *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995) (citing Fed. R. Civ. P. 56(c)). This Court reviews the district court's grant of summary judgment *de novo*, and may affirm on any ground. *See Arrington v. Cobb Cnty.,* 139 F.3d 865, 871 (11th Cir.1998).

When evaluating a district court's conclusions on a Rule 12(b)(1) motion, this Court "reviews the district court's legal conclusions *de novo* and its factual findings for clear error." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009); *see also Lawrence v. Dunbar,* 919 F.2d 1525, 1530 (11th Cir. 1990) ("The usual standard of reviewing a district court's findings of jurisdictional facts is the clearly erroneous standard."). The "'clearly erroneous' standard is 'highly deferential.'" *Carmichael*, 572 F.3d at 1280. The district court's determination should be affirmed "so long as it is plausible in light of the record viewed in its entirety." *Merrill Stevens Dry Dock Co. v. M/V YEOCOMICO II,* 329 F.3d 809, 816 (11th Cir. 2003) (quotation marks omitted); *see also Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1543 (11th Cir. 1985) ("While the 'clearly erroneous' standard of review is less stringent than the well-known sports

rule, 'The referee is always right,' it nevertheless presents a formidable challenge to appellants who . . . seek to overturn the factual findings of a district court.").

The appellate court reviews a district court's denials of motions to alter or amend a judgment for abuse of discretion. *Raney v. Aware Woman Ctr. for Choice, Inc.*, 224 F.3d 1266, 1268 (11th Cir. 2000). "An abuse of discretion occurs when the district court applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous, or when it misconstrues its proper role, or ignores or misunderstands the relevant evidence." *Sciarretta v. Lincoln Nat. Life Ins. Co.*, 778 F.3d 1205, 1212 (11th Cir. 2015) (internal quotation marks and citation omitted).

## SUMMARY OF THE ARGUMENT

The district court did not err in finding that Rivera secretly provided nearly $76,000 of in-kind contributions to the primary election campaign of Justin Lamar Sternad in Florida's 26th Congressional District, in violation of 52 U.S.C. § 30122, granting the Commission's motion for summary judgment, and assessing a $456,000 civil penalty against Rivera for his knowing and willful violations of FECA's prohibition on contributions made in the name of another. The evidence showed that Rivera purposefully attempted to weaken a likely general-election opponent and trick voters into believing that the advertising had come from

another candidate in the opposition party's primary election. Throughout the entire scheme, Rivera attempted to hide all written traces of his involvement and orchestrated his contributions being reported in a manner that did not reveal him as the true source of the funds. The FEC also established that Rivera's concealed payments harmed the public, that Rivera can pay a substantial civil penalty, that there is a continuing need for deterrence of the illicit funding of sham and fringe candidates, and that Rivera's continued unwillingness to take responsibility for his actions demonstrate a likelihood of future violations. Rivera did not genuinely dispute the volumes of evidence the FEC presented, only offering unfounded contentions denying responsibility and limited exhibits that failed to demonstrate a genuine issue of fact.

Now in this appeal, Rivera seeks reversal of the district court's summary judgment order and claims the district court committed error in denying his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for three reasons, none of which are persuasive. *First*, Rivera argues that the Commission did not state a claim for a violation of Section 30122. Yet Rivera's theory is wrong, and his conduct and the evidence presented clearly established this violation. *Second*, Rivera asserts that the district court lacked subject matter jurisdiction, however the Commission followed the jurisdictional pre-suit procedures in order to bring this lawsuit, and attempted to conciliate the matter through repeated and diligent pre-litigation

efforts. *Third*, Rivera seeks reversal of the $465,000 civil fine, however Rivera waived this argument by failing to oppose the penalty in his summary judgment papers. Moreover, the civil penalty the district court imposed falls squarely within the range of Congress's discretion and plainly meets constitutional scrutiny.

The district court properly held Rivera accountable for his surreptitious attempt to undermine the transparency of the financing for the primary election of his political opponent. Rivera's attempts to continue to dodge responsibility for his FECA violations should be denied, and the district court's orders should be affirmed.

## ARGUMENT

## I.    THE DISTRICT COURT PROPERLY DETERMINED THAT IT HAD SUBJECT MATTER JURISDICTION

The district court properly determined that the FEC met the statutory and jurisdictional prerequisites for suit in FECA (*supra* pp. 12-16). Now Rivera also claims he was improperly contacted directly by agency counsel, and that contact invalidates the administrative process prior to filing suit. But the record shows FEC properly communicated with Rivera.

### A.    The FEC Met the Statutory Prerequisites for Filing this Case

Each step in the administrative process provided Rivera with notice of the facts and the alleged statutory violation of Section 30122 that is the basis of this case. (*See supra* pp. 12-16.) Rivera's own admissions and the FEC's steps,

documented by the district court, show the administrative prerequisites have been met.

Rivera argues the FEC's "probable cause determination and conciliation attempts" were based on the helping and assisting theory in a regulation that it has since repealed.  (Appellant's Br. ("Br.") 33-34.)  But the facts and violations cited at each stage of the administrative process do not support Rivera's narrow view of the notifications and actions taken by the Commission.  As a factual matter, the FEC included all of the financial transactions that are in the Amended Complaint at each stage in the administrative process.  The FEC included the statutory violation and citation to the applicable regulation that is the basis of the Amended Complaint, and at each stage of the process included a reference to the same broadly applicable implementing regulation.  *See supra* pp. 17-18.

At the reason to believe stage, the notification cited 52 U.S.C. § 30122, among other statutory provisions and included with this notification a Factual and Legal Analysis, which described the scheme that formed the basis of the Amended Complaint.  (ECF 142-36 ¶ 3.)  After an investigation, the FEC provided a copy of the brief that also included the General Counsel's recommendation including violations of 52 U.S.C. § 30122 and 11 C.F.R. 110.4(b).  (ECF 172-1 ¶ 11).  The brief included a chart showing all of the exact same payments of cash from Rivera that were later included in the Amended Complaint in this action, but also included

payments from a nonprofit entity that Rivera had merely facilitated.  (ECF 172-1 at 37.)

The Commission then found probable cause to believe Rivera had violated the FECA, citing the statute and regulation at issue in this case. i.e., it certified that Rivera "knowingly and willfully violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b)."  (ECF 172-1 at 53.)  The notice sent to Rivera, the proposed conciliation agreement, and the formal record certifying the votes here did not cite or specify a particular clause of 11 C.F.R. § 110.4(b).

The FEC's Amended Complaint omitted the facts regarding a check payment from a nonprofit that Rivera had merely facilitated, and focused only on the cash payments for which the previous record indicated primary liability could be established.  (ECF 1 at 3-4; ECF 41 at 5 .)  The FEC was free to narrow the case at that juncture given the intervening legal developments regarding the helping or assisting regulation. In denying Rivera's 12(b)(1) motion, the district court correctly held that "the Amended Complaint is reasonably related to the allegations in the administrative proceeding such that the Amended Complaint was not subject to separate presuit notice."  ECF 176  at 10 (citing *Kavanaugh v. Miami-Dade Cty.*, 775 F. Supp. 2d 1361, 1367 (S.D. Fla. 2011)); *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1279–80 (11th Cir. 2004) (actions allowed that "amplify, clarify, or more clearly focus" allegations in administrative complaint); *Cooper v.*

*Nielsen*, 298 F. Supp. 3d 197, 202 (D.D.C. 2018); *Cooper v. Fed. Emergency Mgmt. Agency*, No. 19-5118, 2019 WL 6218791 (D.C. Cir. Nov. 15, 2019). The proper "inquiry becomes whether the claims raised in the judicial complaint are related to or grow out of the allegations" in the administrative matter. *Kavanaugh*, 775 F. Supp. 2d at 1367.

The only authority on which Rivera relies, a quote which he claims is from *FEC v. National Republican Senatorial Committee* ("*NRSC*"), 877 F.Supp. 15, 18 (D.D.C. 1995), does not in fact contain any of the text Appellant's brief purports to quote. This apparent error leaves the argument entirely unsupported by authority. Even if an argument could be inferred based on the citation to *NRSC*, Rivera's reliance is misplaced. At issue in that case was whether a claim that accrued *after* the Commission completed its investigation and satisfied the statutory requirements contained in FECA. *Id.* at 15-18. In contrast, all of the factual and legal violations alleged here took place prior to the administrative process and the filing of suit.

It appears Rivera attempts to draw from *FEC v. National Rifle Association of America, Inc.,* 553 F. Supp. 1331, 1333 (D.D.C. 1983) ("*NRA*"). It is not surprising that Rivera did not want to draw this Court's attention to that case, which provides strong support for the adequacy of the administrative process here. In *NRA*, the court denied defendants' motion to dismiss for lack of subject matter

30

jurisdiction, which was in part based upon allegations that the Commission did not properly complete the administrative process. The *NRA* court dismissed separate counts in the complaint that were unrelated to the facts and violations that had been before the Commission. *NRA*, 553 F. Supp. at 1336. The dismissal occurred in the "unusual circumstances" that the litigation sought to involve different transactions and violations. *Id.* at 1338. Here, the administrative process included the law and all of the facts that were later the basis for the Amended Complaint, so *NRA* provides no support for Rivera's position, and all of the prerequisites to suit were satisfied. The district court's denial of Rivera's Rule 12(b)(1) motion was proper, and this Court should affirm.

**B.     Rivera Forfeited Any Arguments Regarding Being a Represented Party and The FEC Appropriately Communicated with Rivera In Any Event**

For the first time on appeal, Rivera argues that the FEC providing administrative materials directly to him and attempts to contact him directly are a jurisdictional defect. (Br. 36-38.) But Rivera did not present this argument to the district court. If a party hopes to preserve an argument, it "must first clearly present it to the district court in such a way as to afford the district court an opportunity to recognize and rule on it." *CSX Transp., Inc. v. General Mills, Inc.*,

846 F.3d 1333, 1336–37 (11th Cir. 2017).  Rivera forfeited any contentions in this area.

Even if Rivera had preserved arguments related to contacts with a purported represented party, that argument fails as a matter of both law and fact.  The record shows the FEC communicated with Rivera's one-time counsel during the administrative process; provided Rivera's counsel with notifications that were issued; and, only after counsel ceased representation, requested that Rivera advise the agency if he continued to be represented. Rivera never explicitly responded to repeated requests from agency counsel to identify whether he was represented but began to communicate in a manner consistent with self-representation.  (ECF 172-1 ¶¶ 3-7.)

Moreover, Rivera fails to cite any authority for the proposition that mailing notifications to him directly is a jurisdictional defect sufficient to deprive the court of jurisdiction.  And Rivera also fails to establish that he was represented at later points in the administrative proceedings when material was mailed directly to him. The record demonstrates repeated requests from agency counsel to Rivera's former counsel and repeated inquiries to Rivera as to whether he was represented that went unanswered.  (*See id.*)

Even the Florida Bar Rule Rivera cites (Br. 37) "only applies in circumstances where the lawyer knows that the person is in fact represented in the

matter to be discussed." Fla Bar. Rule 4-4.2 (Comment). Thus, since the record

establishes that agency counsel repeatedly asked if Rivera was represented, and

Rivera did not disclose he was represented, the agency was in compliance with this

rule. A Florida court, in applying rule 4-4.2, has also confirmed that status as "an

unrepresented party [is] not dependent upon his former counsel's compliance with

the requirements . . . regarding withdrawal of an attorney." *Re Decker*, 212 So. 3d

291, 306 (Fla. 2017) (per curiam). Thus, it was reasonable for agency counsel

after two months of failed communication to counsel to inquire if Rivera was

represented in the administrative matter. Rivera preserved no argument regarding

his representation status below and in any event his contentions fail to provide any

reason to disturb the district court's judgment.

## II.  THE DISTRICT COURT PROPERLY DETERMINED THAT RIVERA VIOLATED 52 U.S.C. SECTION 30122 BY MAKING $75,927.31 OF IN-KIND CONTRIBUTIONS IN THE NAME OF ANOTHER

### A.  Documentary Evidence, Corroborating Witness Testimony and Rivera's Own Statements Established His Liability

The district court order granting the Commission's summary judgment

motion was based on undisputed evidence and straightforward application of the

law. Contemporaneous documentary evidence, testimony of Rivera's associate,

and the testimony of all the vendors whose services were purchased, established

that a then-sitting Congressman engaged in an illicit scheme to provide campaign

assistance to an opponent's primary opponent to weaken him in advance of the

general election.  The evidence the Commission provided in support of summary

judgment included:

- The grand jury testimony and guilty plea statements of Ana Alliegro, Rivera's former romantic partner and associate in the scheme.  Alliegro testified repeatedly that the cash to pay the vendors for the Sternad campaign came from Rivera, and that it was Rivera's scheme.  Alliegro sought direction from Rivera on payment issues and campaign messaging, which Rivera provided.  (*See* ECF 142-5; ECF 142-33 at AZTP 0038-58, AZTP 00041-42.)

- The testimony of John Borrero, Yolanda Rivas, Henry Barrios, and Hugh Cochran, the vendors that Rivera worked with on the Sternad Campaign that confirmed the source funds for the mailings came from Rivera. (ECF 142-1; (ECF 142-5 at 26-27; ECF 142-30) (Rivera paying $2,600 for graphic design services)); (ECF  142-5 at 29; ECF 142-13) (Rivera paying at least $15,000 for printing mailers); (ECF  142-5 at 29; ECF 142-13) (Rivera paying more than $37,000 for postage and mailing services).) (ECF 142-15.)  Rivera had previously worked with these vendors at issue, and had no explanation for why the vendors provided consistent testimony implicating him in the oversight and payment for the mailers.

- Rivera took extensive measures to conceal his involvement and prevent a paper trail, by paying in cash delivered usually by an intermediary and seeking to hide his identity from anything in writing showing his involvement (ECF 142-5; ECF 142-32 at p. 150.)  Rivera was also careful to never meet with Sternad but failed to mention to the vendors that the work they were performing at his request was not for his own campaign.  (ECF 142-5; ECF 142-35; ECF 142-15.)

- Rivera directed Alliegro to have Sternad falsely report to the FEC that the funds he received for his campaign as personal loans.  (ECF 142-5 at 33-35.)

Rivera raised no genuine issue of fact about any of this evidence.  As the

district court properly held, Rivera's scheme presented a blatant example of false

name contributions:  Rivera, functioning as the true source, made in-kind

contributions to the Sternad campaign through Alliegro, acting as an intermediary.

Sternad then accepted the funds and falsely reported the contributions as personal

loans made by Sternad to his committee.  (ECF 163 at 33-34)

### B. Rivera's Evidentiary Challenges Are Without Merit

Despite his failure to genuinely raise any issues of fact at the district court,

Appellant makes two evidentiary challenges on this appeal.  First, Rivera asserts

that Alliegro's grand jury testimony that helped establish Rivera's liability should

be disregarded.  Second, he broadly claims, "the rest of the evidence was all

circumstantial and anecdotal accounts of Rivera's alleged general involvement and

connection to the activities of the Sternad campaign," and asserts that the evidence

did not support the imposition of the civil penalty.  (Br. 43).  Both arguments are

without merit.

First, the district court soundly rejected Appellant's argument regarding

Alliegro's grand jury testimony and subsequent declarations, explaining in great

detail that Alliegro had *not* actually repudiated her prior grand jury testimony

through a 2019 declaration or a bar complaint.  (ECF 163 at 5).[7]  Alliegro's

---

[7]     The district court highlighted the "disingenuous and misleading nature of
Alliegro's statements concerning the Bar Complaint," including that Rivera had
"neglected to inform the Court that the Florida Bar threw out the Bar Complaint
*prior* to the filing of Rivera's opposition brief (and *prior* to the date Alliegro
purportedly signed her Declaration)."  (ECF 163 at 7 (citing ECF 153-1).)

declaration had vaguely referred to a Florida Bar complaint she made in her underlying criminal case against Assistant U.S. Attorney Thomas Mulvihill. Notably, the Court found it "odd that Rivera claims that Alliegro repudiated her grand jury testimony, as well as the statements she made at her plea colloquy, yet Rivera fails to cite to the Declaration in which Alliegro purportedly repudiated that sworn testimony." (*Id*.)   Rivera's renewal of unsupported allegations on this appeal that Alliegro "recanted" the testimony establishing Rivera as the source of the funds made to the Sternad campaign and the mastermind behind the scheme should be similarly disregarded.

Moreover, as the district court correctly noted, Alliegro's purported declaration was "rife with vague and ambiguous assertions, and it does not contain *any* specific facts." (ECF 163 at 6.)  It did not "specifically identify what or how the allegations in the Amended Complaint are "patently false."  Nor does it identify what statements were purportedly coerced." (*Id.*)  In sum, the district court held that "the one-page Declaration does not state what Rivera contends that it states. The declaration does not even mention Alliegro's grand jury testimony. Nor does it mention her plea colloquy." (*Id.*)  As such, the Court properly found that there was "no basis for it to construe Alliegro's declaration to be a repudiation of her grand jury testimony and plea colloquy that she gave in criminal court, under penalty of perjury, five years before the declaration here was purportedly

36

executed." (*Id.*)  With respect to the Alliegro's bar complaint, the district court

explained that it "relies upon ambiguous, generic, and conclusory allegations that

lack sufficient specificity to repudiate Alliegro's grand jury and plea colloquy

testimony." (*Id.* at 8.)[8]  The Court found Alliegro's declaration and incorporated

Bar complaint "akin to a sham affidavit with the only exception being that they

were made by a nonparty." (*Id.* at 13).

Significantly here, Rivera does not challenge the district court's findings on

Alliegro's testimony other than asserting in a conclusory manner that it "did not

support the entry of summary judgment." (Br. 43.)  This is insufficient to establish

a dispute of fact. *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir.2005) (per

curiam) ("[M]ere conclusions and unsupported factual allegations are legally

insufficient to defeat a summary judgment motion.").  In contrast to her purported

declaration, Alliegro's grand jury testimony is consistent with the substantial

---

[8]    Appellant asserts that "contrary to the district court's ruling, neither Alliegro
nor Sternad testified that Rivera directed or instructed Alliegro to direct or instruct
Sternad to make the false reports to FEC." (Br. 43.)  However, Alliegro did testify
that Rivera gave this direction, explaining that ""After speaking with David
[Rivera], the only thing that I advised Mr. Sternad to do was to report it as a
personal loan and then go ahead and amend it later because David supposedly had
another plan of how he was going to take care of all of this . . . .  Rivera thought if
we did this and called it a loan the media would get off of it and it would all go
away." (ECF 142-5 at 33-35.)

documentary and other evidence that Rivera failed to dispute at summary judgment establishing his liability.

Rivera's remaining evidentiary challenge fares no better.  Appellant broadly asserts without support that "[t]he rest of the evidence was all circumstantial and anecdotal accounts of Rivera's alleged general involvement and connection to the activities of the Sternad campaign."  Appellant only points to the cell phone logs between Alliegro and Rivera, claiming that this material was improperly considered by the district court as "hearsay."  (Br. 43).  As noted above, Rivera did not genuinely dispute this evidence at the district court or offer any evidence or explanation in response.  *See Jacoby v. Keers*, 779 F. App'x 676, 679 (11th Cir. 2019) (per curiam); *Minnifield v. Johnson & Freedman II, LLC*, 522 F. App'x 782, 784 (11th Cir. 2013) ("the strength of undisputed facts is immaterial at the summary-judgment stage") (per curiam).  The district court's order should be affirmed on this ground alone.

 Even if Rivera had properly disputed the issue, the district court was within its discretion to consider this material at summary judgment.  Rivera argues that the call logs and text messages were not "authenticated," but even in the absence of a timely objection, the district court *sua sponte* made detailed findings establishing that the messages had been sent between Alliegro's cellphones and Sternad or Rivera, relying on among other things an FBI extraction report and direct evidence

from multiple witnesses.  (*See* ECF 163 at 31 n.5.)  Even if that were not the case, at the summary judgment stage, "evidence does not have to be authenticated or otherwise presented in an admissible form to be considered at the summary judgment stage, as long as the evidence could ultimately be presented in an admissible form."  *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1156 n.2 (11th Cir. 2021) (internal quotation marks omitted).  Here, Rivera has presented no argument to compel a conclusion that the call logs or texts — common types of evidence admitted in civil cases — were not capable of being admitted at a trial. *See Bradley v. Pfizer*, 440 F. App'x 805, 807 (11th Cir. 2011) ("For factual issues to be considered genuine, they must have a real basis in the record."); *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) ("A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.").  *See also United States v. Carson*, 447 F. App'x 925 (11th Cir. 2011) (text message between two alleged co-conspirators was admissible at trial of defendant on drug conspiracy charges under co-conspirator exception to the hearsay rule) (citing Fed. R. Evid. 801(d)(2)(E)).

Lastly, Rivera argues that "the evidence was not competent or sufficient to impose a civil penalty on Rivera," and that the Court should have denied the Commission's motion on this basis or conducted an evidentiary hearing.  (Br. 44.) Yet, the evidence concerning the civil penalty remained undisputed at summary

judgment.[9]  As the district court explicitly recognized, Rivera's response was "silent" as to any argument about the amount of the fine the FEC sought.  (ECF 163 at 34 & n.7.)  The district court did not abuse its discretion by evaluating the Commission's motion and the recommendation of the civil penalty based on the extensive record before it.  For his part, Rivera did not present any support for his argument that the fine imposed was improper or that Rivera did not have the ability to pay.[10]

---

[9]    To demonstrate Rivera's ability to pay the $456,000 fine, the FEC provided the district court with Rivera's 2015 Disclosure Statement, filed in 2016, in which he asserted that his net worth was $1,511,968.  (ECF 142-37.)  Further, the FEC noted the 2020 breach of contract action pending against Rivera's consulting firm alleging that he had recently been paid $15 million for the contract work.  *See PDV USA, Inc., v. Interamerican Consulting, Inc.*, No. 20-cv-3699, 2020 WL 2479227 (S.D.N.Y. May 13, 2020).

[10]    Appellant cites *FEC v. Kalogianis*, 2007 WL 4247795, at *6 (M.D. Fla. Nov. 30, 2007) apparently for his position that he was entitled to an evidentiary hearing on the civil penalty.  However, in *Kalogianis*, the district court did not suggest that an evidentiary hearing was necessary to resolve the penalty issue. Moreover, while the district court here explicitly held that Rivera's conduct was willful and therefore necessitated an enhanced penalty, the court in *Kalogianis* found that the defendants' conduct "evinces no bad faith."  *Id.*  Instead, the conduct in *Kalogianis* was a case in which "any injury to the public is remote and circumscribed."  *Id.*  Appellant's reliance on *Fed. Election Comm'n v. Friends of Jane Harman*, 59 F. Supp. 2d 1046, 1059 (C.D. Cal. 1999) is similarly misplaced. In determining the penalty in that case, the court explained that "it does not appear that deliberate or serious violations occurred in this case."  *Id.*

### C. Appellant Misapplies the Law on Contributions in the Name of Another

In an effort to address the uncontested record establishing Rivera's contributions in the name of another, Appellant posits yet another theory about the prohibition at issue that again misses the mark. Rivera asserts that the district court erred in granting the Commission's summary judgment motion because, "FEC's allegations do not state a cause of action for violation of FECA § 30122," because the "FEC did not allege that Rivera 'made' contributions to FEC; it alleged that Rivera 'made' contributions to the Sternad campaign." (Br. 39.)

Rivera has three times set forth various arguments attempting to recast his conduct as not falling within the statute, and each time he has incorrectly conflated section 30122 with what is actually a violation of 18 U.S.C. § 1001. Rivera first proffered this argument in his motion to dismiss the FEC's Amended Complaint. (*See* ECF No. 49 at 13:3-7 (Rivera's counsel arguing that "[i]t's a 1001 violation" because "[t]he FEC is requiring the candidate to truthfully disclose").) This was rejected by this Court in denying this motion. (ECF 48.)

On summary judgment, Rivera again asserted that he could have violated section 30122 only if Rivera directly filed the Sternad's disclosure reports himself with the FEC. (*See* ECF 139.) In his post-summary judgment motion, Rivera again attempted to place all emphasis on Sternad filing the disclosure reports for his campaign, arguing that it was solely Sternad's false filings that established

41

Rivera's illegal acts.   (ECF 171.)  In each instance the district court found these arguments unpersuasive, explaining that Rivera willfully violated 30122 by carrying out the entire scheme, which included: "using cash to make contributions to the Sternad Campaign to thereby avoid a paper trail reflecting that he was the source of the contributions; utilizing Alliegro and other third parties as the 'middleman' in the scheme to transfer funds to and/or pay invoices on behalf of the Sternad Campaign; and directing Sternad, through Alliegro, in how to complete and submit false FEC filings."  (ECF 163 at 35).

Rivera now suggests a slightly new variation of his previous theory that because Rivera openly "made" the payments "in his own name" to the same vendors he used on his campaign," he did not make contributions in the name of another.  (Br. 4, 38.)  However, Appellant's evaluation of the conduct that establishes a violation of 52 U.S.C. 30122 is incorrect.  Rivera's reliance on *FEC v. Swallow*, is misplaced.  The operative complaint at issue on this appeal does not involve secondary liability or the secondary conduct the Utah court evaluated in that case.  In *Swallow*, the defendant was not accused of making any contributions himself, but of assisting another in doing so.  *See Swallow*, 304 F. Supp. 3d at 114. Here, as the district court held, Rivera was the source for all of the contributions in the Amended Complaint.  (ECF No. 163 at 35 ("Rivera's acts of: using cash to make contributions to the Sternad Campaign" were used to "avoid a paper trail

42

reflecting that he was the source of the contributions").)  Furthermore, all of Rivera's acts — from making the payments in cash to the vendors, to directing others to conceal *his* name — established that he intentionally and willfully sought to have the contributions that were ultimately reported not be made not in his name, but in the name of Sternad.  (*Id*.)

FECA and the Commission's regulations provide that a person who gives the funds to another for the purpose of contributing "makes" the resulting contribution.  *See Boender*, 649 F.3d at 660; *see also United States v. Whittemore*, 776 F.3d 1074, 1080 (9th Cir. 2015) (holding that defendant's "unconditional gift[s]" to relatives and employees, along with suggestion they contribute the funds to a specific political committee, violated section 30122 because the source of the funds remained the individual who provided them to the putative contributors). The entirety of Rivera's scheme is the 30122 violation.  *See, e.g.*, *Danielczyk*, 788 F. Supp. 2d at 478-79 (describing a donor making a contribution to a campaign but representing himself to the campaign as someone else as a "false -name contribution" that is a § 30122 violation); *see also* 11 C.F.R. § 110.4(b)(2)(ii) (An example of a false-name contribution is a person "[m]aking a contribution of money or anything of value and attributing as the source of the money or thing of value another person when in fact the contributor is the source.").

The fact that Alliegro, the vendors, and Sternad may have suspected or even knew that Rivera was the source of the funds does not invalidate the 30122 conduct.  And indeed, such a concealment element is unnecessary to state a claim under section 30122, and Rivera cites no authorities to establish otherwise.  Had Congress intended to provide that "no person shall make a contribution in the name of another person *without the recipient's knowledge*," it would have so provided. It did not.  On the contrary, in addition to contributors' liability, Congress provided liability for anyone who "*knowingly* permit[s] his name to be used to effect such a contribution" or who "*knowingly* accept[s] a contribution made by one person in the name of another person," 52 U.S.C. § 30122 (emphases added), thus confirming that knowing a true source does not remove liability.  Indeed, knowledge of misattribution by a recipient or by a person knowingly allowing his name to be used attaches FECA's name-of-another liability to those who accept the contributions or permit their names to be used, regardless of whether the identity of the true contributor is also known.[11]  The text of section 30122 thus itself illustrates the flaw in Rivera's argument.

---

[11]   This is consistent with the conduct for which Sternad ultimately pled guilty. Although Sternad professed to not be entirely certain of whether Rivera was the true source for the funding of his campaign, the judge nevertheless accepted his guilty plea to accepting the illegal contributions.  *See generally* Factual Basis of the Plea of Guilty, *United States v. Sternad*, 13-cr-20108-CMA (Doc. No. 13).

Rivera's argument also misconceives the purpose of section 30122. The section serves Congress's more foundational purposes in making voters aware of the sources of campaign financing and establishing base contribution limits to "limit the actuality and appearance of corruption resulting from large individual financial contributions." *Buckley*, 424 U.S. at 26.  Section 30122 "prevent[s] the circumvention of the ban on corporate and union contributions," "prevent[s] circumvention of the limits on contributions by individuals and groups . . . and the prohibition on contributions by foreign nationals," and "ensures that proper disclosure of the actual sources of campaign contributions occurs in federal elections." *Mariani*, 80 F. Supp. 2d 352 at 368; *see also Goland v. United States*, 903 F.2d 1247, 1251 (9th Cir. 1990) (section 30122 prevents "circumvent[ion]" of other FECA restrictions); *id.* at 1261 (explaining that a "major purpose behind the disclosure provision is to deter or expose corruption, 'and therefore to minimize the influence that unaccountable . . . individuals can have on elected federal officials'" (quoting *FEC v. Furgatch*, 807 F.2d 857, 862 (9th Cir. 1987))); FEC Advisory Op. (Air Transport Association of America), 1986-41, http://saos.fec.gov/aodocs/1986-41.pdf (last visited Aug. 14, 2023) (explaining that section 30122 "serves to insure disclosure of the source of contributions to Federal candidates and political committees as well as compliance with the Act's limitations and prohibitions").

45

Accordingly, courts analyzing violations of section 30122 have not hesitated to enforce that provision in circumstances such as these where the campaign or committee had knowledge of the sources of funds. *See, e.g.*, *Boender*, 649 F.3d at 659-61 (sustaining contributor's section 30122 liability for use of straw donor in case involving alleged quid pro quo scheme in which candidate was aware of the contributor's identity); *United States v. Smukler*, 330 F. Supp.3d 1050, 1061 (E.D. Pa. 2018) (denying motion to dismiss and finding that the "indictment properly charges that defendant made a conduit contribution"); *United States v. Smukler*, No. CR 17-563-02, 2018 WL 3416401, at *3 (E.D. Pa. July 13, 2018) (explaining factual context of a violation where "defendant sent a check for $25,000 [to candidate] and instructed [candidate] to transfer $23,750 from her personal account to the campaign account"); Judgement, *United States v. Smukler*, No. CR 17-563-02 (E.D. Pa. Dec. 7, 2018) (Doc. No. 176) (jury verdict finding defendant guilty of section 30122 violation).  And the FEC itself has regularly enforced section 30122 in accordance with its plain terms.  *See, e.g.*, Matter Under Review ("MUR") 4322 (Waldholtz) (where the campaign knowingly accepted approximately $1.8 million in false name contributions from candidate's father and attributed contributions to the candidate), https://www.fec.gov/files/legal/murs/4322/00003A6F.pdf; MUR 6922 (ACA International Political Action Committee) (where, in an effort to address a perceived shortfall in a political action committee's bank account, a

corporate officer authorized a transfer of $23,419 to committee's account where

the committee was aware of the true source),

https://www.fec.gov/files/legal/murs/6922/15044376182.pdf.

## III.   THE DISTRICT COURT CORRECTLY HELD THAT RIVERA'S CIVIL PENALTY IS NOT UNCONSTITUTIONALLY EXCESSIVE

The District Court's denial of Rivera's post-judgment motion under Rule

59(e) or Rule 60(b) of the Federal Rules of Civil Procedure was not an abuse of

discretion.  Appellant argues that the civil penalty imposed by the district court

pursuant to Section 30109(a)(6)(C) is unconstitutionally vague and excessive.  Yet

Rivera's failure to raise any argument against the FEC's proposed fine at the

summary judgment stage operated as a waiver of his Eighth Amendment argument.

Moreover, the primary decision on which Rivera relies, *Yates*, did not warrant

post-judgment relief and was not excessive or vague under any of the factors

outlined in *Yates* and prior precedent.

### A. Rivera Waived the Ability to Challenge the Civil Penalty by Not Raising it on Summary Judgment.

A court may find that a party waived any arguments that were not addressed

in its response to a summary judgment motion.  *Am. Home Assur. Co. v. Glenn*

*Estess & Assocs., Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985); *Schwarz v. Bd. Of*

*Supervisors on behalf of Villages Cmty. Dev. Districts*, 672 F. App'x 981, 983

(11th Cir. 2017) (per curiam) (affirming a district court's finding that plaintiffs had

47

waived any challenge to the defendant's motion for summary judgment on certain grounds which the plaintiffs did not address in their response to the motion for summary judgment); *Carter v. BPCL Mgmt., LLC*, Civ. No. 19-60887, 2021 WL 7502560, at *8 (S.D. Fla. Sept. 28, 2021) (same).  Here, as the district court explained in its order denying Rivera's post-judgment motion, Rivera made no opposition to the Commission's arguments concerning the civil penalty at summary judgment.  (ECF 191.)  Rather, the Court explained, "[d]efendant waited more than a year after the Court granted Plaintiff's requested penalty to raise a challenge to the civil penalty—and after a separate, unsuccessful post-summary judgment motion to dismiss for lack of jurisdiction."  (*Id.* at 4 (citing ECF Nos. 163, 171, 176).)  There was "no mention of the civil penalty in Defendant's Motion for Summary Judgment or Reply in support thereof [ECF Nos. 139, 152], or in Defendant's opposition to Plaintiff's Motion for Summary Judgment [ECF No. 146]."  (*Id.*)  Furthermore, "nothing prevented Defendant from raising an argument on summary judgment that Plaintiff's proposed civil penalty was too high or otherwise in tension with the Eighth Amendment under traditional principles."  His failure to do so was "a sufficient basis for denying him the opportunity to bring an Eighth Amendment challenge for the first time now." (ECF 191 at 5.)

Rivera relies on this Circuit's opinion in *Yates*, which was issued after the district court's summary judgment ruling.  (Br. 45.)  Yet this decision provides no basis for reversal either.  The monetary award at issue in *Yates* was imposed after a jury trial that established the damages caused by the defendant's False Claims Act violations.  *See Yates*, 21 F.4th at 1297. The plaintiff had not moved for summary judgment as to damages.  *See* Relator Michele Yates's Mot. for Partial Summ. J., *Yates v. Pinellas Hematology & Oncology, P.A.*, No. 8-15-cv-799 (M.D. Fla. Feb. 11, 2020) (Doc. No. 103) (Dec. 14, 2018). There was, therefore, no comparable prior opportunity for the defendant to have opposed issuance of monetary relief. Here, by contrast, the issue of the proper amount of civil penalty was squarely raised by the FEC's summary judgment papers and Rivera failed to address it.  The district court's determination that this failure foreclosed his ability to raise it post-summary judgment was not an abuse of discretion.  Rivera waived this issue and has demonstrated no justification compelling this Court to vacate this order.  *See Solaroll Shade & Shutter Corp., Inc. v. Bio–Energy Systems, Inc*., 803 F.2d 1130, 1132 (11th Cir. 1986).

## B.  The Civil Penalty is Not Unconstitutionally Excessive Under *Yates*.

Even if the civil penalty was subject to an Eighth Amendment analysis, the district court correctly held that the penalty is not excessive because it is not grossly disproportional to Rivera's offense.  The district court had properly

49

analyzed four factors in determining the appropriate amount. *See supra* pp. 20-22; *see also Furgatch*, 869 F.2d at 1258; *FEC v. O'Donnell*, 15-cv-17, 2017 WL 1404387, at *2 (D. Del. Apr. 19, 2017) (unpublished); *FEC v. Craig for U.S. Senate*, 70 F. Supp. 3d 82, 100 (D.D.C. 2014), *aff'd*, 816 F.3d 829 (D.C. Cir. 2016); *FEC v. Comm. of 100 Democrats*, 844 F. Supp. 1, 7 (D.D.C. 1993).[12] The Eighth Amendment prohibits the government from imposing "excessive fines." U.S. Const. amend. VIII. The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) (quoting *United States v. Bajakajian*, 524 U.S. 321, 327–28 (1998)). In other words, payments to the government constitute a fine within the meaning of the Eighth Amendment when "it can only be explained as serving in part to punish." *Austin v. United States*, 509 U.S. 602, 610 (1993). The touchstone of the Excessive Fines Clause is proportionality: A fine is excessive if it is "grossly disproportional to the gravity of

---

[12] The district court's finding of the need for deterrence has proven correct in the interim, as additional instances of illicit funding of sham or fringe candidates in Florida have since been criminally prosecuted. *See, e.g.*, Natalia Jaramillo, *Ghost Candidate in Osecola Commission Race Found Guilty*, Orlando Sentinel (Aug. 9, 2023) (former local official accused found guilty on 14 criminal counts of campaign finance reporting violations as part of "ghost" candidate scheme in 2022 county commission race and sentenced to 180 days in jail), https://www.orlandosentinel.com/2023/08/09/ghost-candidate-in-osceola-county-commissioner-race-found-guilty-sentenced-to-jail/#:~:text=A%20former%20Kissimmee%20city%20commissioner,to%20180%20days%20in%20jail.

a defendant's offense." *Bajakajian*, 524 U.S. at 334. The district court held that, "[t]he $456,000 penalty, which represents roughly 600% of the amount of the violation, falls roughly mid-way between the 300-to-1,000 percent range provided in the penalty provision and adequately reflects Defendant's conduct and the harm to the public as explained in the Order Granting Summary Judgment [ECF No. 163 pp. 34–38]." (ECF 191 at 7.)

The Eleventh Circuit has long read *Bajakajian*—the Supreme Court opinion establishing the "gross disproportionality" standard in the excessive-fines context—as requiring courts to presume fines within the legislatively enacted range pose no Excessive-Fines-Clause problem. *See United v. Chaplin's, Inc.*, 646 F.3d 846, 852 (11th Cir. 2011) (granting a "strong presumption" of constitutionality to fines that fall "below the maximum statutory fines for a given offense"); *United States v. 817 Ne. 29th Drive*, *Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir. 1999) (same). "FECA grants district courts broad authority to fashion remedies for violations of the statute," *FEC v. Craig for U.S. Senate*, 816 F.3d 829, 847 (D.C. Cir. 2016). The civil penalty the Court imposed was pursuant to 52 U.S.C. § 30109(a)(6)(C), which applies to knowing and willful violations of the ban on making contributions in the name of another. That provision permits a court to "impose a civil penalty . . . which is not less than 300 percent of the amount involved in the violation and is not more than the greater of

51

$50,000 or 1000 percent of the amount involved in the violation." 52 U.S.C. §

30109(a)(6)(C). In addition to having a statutory range, courts have fashioned

additional standards to guide a district court's discretion within the range. Thus, "a

district court should consider (1) the good or bad faith of the defendants; (2) the

injury to the public; (3) the defendant's ability to pay; and (4) the necessity of

vindicating the authority of the responsible federal agency." *Furgatch*, 869 F.2d at

1258. The district court applied those standards in this case and the fine imposed

against Rivera was well within the allowable range.  (ECF 163 at 34-37.)

Additionally, applying the factors identified in *Yates* confirms this strong

presumption that the penalty is not disproportionate to the offense. The Eleventh

Circuit identified "several, non-exhaustive factors that guide an Excessive Fines

Clause analysis: (i) whether the defendant is in the class of persons at whom the

statute was principally directed; (ii) how the imposed penalties compare to other

penalties authorized by the legislature; and (iii) the harm caused by the defendant."

*Yates*, 21 F.4th at 1314.

Rivera is plainly within the class of persons at whom section 30122 was

principally directed.  FECA establishes a comprehensive system of disclosure for

contributions, which provides "'the electorate with information about the sources

of election-related spending'" and "minimizes the potential for abuse of the

campaign finance system." *McCutcheon v. FEC*, 572 U.S. 185, 223 (2014)

(quoting *Citizens United*, 558 U.S. at 367).  Without the prohibition, individuals or campaigns could thwart disclosure requirements and contribution limits.  *See supra* p. 6.

Rivera's actions here fall within the core of prohibited conduct.  As the district court explained, "[a]s a U.S. Congressman, at that time, Rivera was well aware of and understood FECA's requirements that campaign contributions must be accurately disclosed to the public.  Yet, Rivera still acted in a manner to avoid FECA's disclosure requirements."  (ECF 163 at 35.)  Moreover, Rivera had "full knowledge of the facts as well as the unlawful nature of his actions."  (*Id.*)

Lastly, the $456,000 civil penalty the Court imposed here is not disproportionate to others that have been imposed under FECA and was actually in the lower half of the permissible range.  As noted above, the Court could have imposed a civil penalty as high as approximately $760,000 within the range set by Congress.  Moreover, the FEC has reached negotiated settlements of FECA violations that are significantly higher than the fine awarded here.[13]  Further

---

[13]    In MUR 5666, Mitchell Wade and MZM, Inc., the company Wade principally owned, were jointly liable for a civil penalty of $1,000,000 under a conciliation agreement with the Commission for FECA violations that included making contributions in the name of another. *See* Selected Cases in which the Civil Penalties are $50,000 or Greater Made Public Between 1980 and Present (Updated May 2022) ("Selected Cases"), at 1, https://www.fec.gov/resources/cms-content/documents/civilpenalties50k.pdf; *see also* FEC, Conciliation Agreement for MZM, Inc. and Mitchell J. Wade, MUR 5666 (Oct. 30, 2007), https://www.fec.gov/files/legal/murs/5666/000065ED.pdf. In MUR 5279, Charles

reflecting the seriousness of violations of 52 U.S.C. § 30122, such violations are often criminally prosecuted.  Criminal violations of section 30122 involving more than $25,000 are punishable as felonies, subject to up to five years' imprisonment. 52 U.S.C. § 30109(d)(1)(A)(i), (D).

The final factor the *Yates* court identified is the harm that has been caused by Rivera's actions.  *Yates*, 21 F.4th 1314.  As the district court explained, "it is hard to imagine a scenario in which Rivera's brazen violations of FECA would not have injured the public."  (ECF 163 at 36.)  Rivera affirmatively tried to dupe the public into believing that advertising against a likely general election opponent had been funded by an opponent in the opposition party's primary election. This is exactly the type of conduct that Section 30122 was designed to protect against, and Rivera falls squarely within the class of individuals targeted by the penalty here. *See, e.g.*, *O'Donnell*, 608 F.3d at 554.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that this Court affirm the judgment of the district court.

---

Kushner and his associated partnerships entered into a conciliation agreement with the FEC on June 24, 2004, which included a civil penalty of $508,900. *See id.* at 2. In today's dollars, the civil penalty in MUR 5279 would be $775,580, a substantially larger penalty than that imposed on Rivera.

Respectfully submitted,

Lisa J. Stevenson                           /s/ *Greg J. Mueller*
Acting General Counsel                      Greg J. Mueller
lstevenson@fec.gov                          Attorney
                                            gmueller@fec.gov

Kevin Deeley
Associate General Counsel                   /s/ *Shaina Ward*
kdeeley@fec.gov                             Shaina Ward
                                            Attorney
                                            sward@fec.gov
August 14, 2023
                                            FEDERAL ELECTION
                                            COMMISSION
                                            1050 First Street NE
                                            Washington, DC 20463
                                            (202) 694-1650

55

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

I hereby certify, on this 14th day of August, that:

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. 32(f), this document contains 12,937 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in a 14-point Times New Roman font.


*/s/ Shaina Ward*
Shaina Ward

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of August, 2023, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Eleventh Circuit by using the Court's CM/ECF system.  All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.


/s/ *Shaina Ward*
Shaina Ward